IN THE MATTER OF CHARLES CANFIELD ON HABEAS CORPUS.

*Constitutional law—Prison discipline—Reduction of time of convicts for good behavior.*

1. How. Stat. § 9704, which provides that the warden of the State prison shall keep a record of all infractions of rules of discipline by convicts, with the names of offenders, and the date and character of each offense, and place it before the managers at each regular meeting of the board, and that every inmate who shall have no infraction of the rules of the prison or laws of the State recorded against him shall be entitled to a certain deduction for each year of his sentence, and *pro rata* for each part of a year when the sentence is for more or less than one year, was intended to assure to convicts a prescribed reduction upon compliance with the rules of the prison, to be made known to them from time to time, and the right to earn such reduction is one of which they cannot be deprived by subsequent legislation; citing *In re Walsh*, 87 Mich. 466.

2. Act No. 118, Laws of 1893, § 33, the effect of which is to deprive convicts in the State prison, in part, of the right given them by How. Stat. § 9704, to earn a certain reduction of sentence by good behavior, by impliedly providing that after the act should take effect the credits of convicts should be estimated

upon a less favorable schedule than that in force when they were sentenced, is to that extent *ex post facto,* its effect being to increase, and not to mitigate, the punishment of such con-. victs.

3. Act No. 118, Laws of 1893, § 33, which discriminates between convicts in the State prison who are serving a first, second, or third term as to the credit to be given them for good behavior, imposes upon the prison authorities the determination of the question as to which term a convict is serving, subject to his right to attack the correctness of the conclusion reached on *habeas corpus.*

*Habeas corpus.* Submitted January 16, 1894. Prisoner discharged February 6, 1894. The facts are stated in the opinion.

*Barkworth & Blair,* for petitioner.

*A. A. Ellis,* Attorney General, for the people.

HOOKER, J. Upon the 7th day of October, 1890, the petitioner was sentenced to be confined in the State prison for a term of four years. At its session of 1893 the Legislature made a change in the law pertaining to the time to be allowed in the reduction of the term of imprisonment of convicts for good behavior. Act No. 118, Laws of 1893. The difference in time allowed will be readily understood by a comparison of the acts, in parallel columns:

| *Act of 1877.* | *Act of 1893.* |
|---|---|
| First and second years, 2 months each, 122 days. | First and second years, 5 days per month, 120 days. |
| Third and fourth years, 75 days per year, 150 days. | Third and fourth years, 6 days per month, 144 days. |
| Total, 272 days. | Total, 264 days. |

It will be seen from the above that a prisoner whose conduct was such as to entitle him to the full benefit of the statute would be entitled to a reduction of eight days more, under the law of 1877, than under that of 1893. The act of 1893 took effect in May last. If petitioner's good time is to be computed under the former act through-

out his term, he was entitled to discharge on January 8, 1894. If it should be computed under the old act up to the date of its amendment (which is conceded), and subsequently under the new, he should have been discharged on January 11, 1894.

Another feature of the new law, not found in the former, is that convicts serving second terms in said prison shall receive less benefit, viz., two days per month for the first two years, and three days per month for the third and fourth years. One serving a third term is allowed no reduction whatever. The petition alleges that the warden claims that he (the petitioner) is serving a second term, and proposes to compute the time accordingly, which (giving petitioner the benefit of good time earned before the act of 1893 took effect) would end his term on March 4, 1894. Petitioner does not deny that he is serving a second term in said prison, and the return states that such is the fact, which, upon the record, must be taken as true.

How. Stat. § 9704 (in force when the petitioner was sentenced), provides:

"The warden shall keep a record of each and all infractions of rules of discipline by convicts, with the names of the persons offending, and the date and character of each offense, which record shall be placed before the managers at each regular meeting of the board; and every inmate who shall have no infraction of the rules of the prison or laws of the State recorded against him shall be entitled to a deduction for each year of his sentence, and *pro rata* for each part of a year, when the sentence is for more or less than one year, as follows."

The question here presented is whether this language has the effect of vesting the convict with the right to have the time deducted from his sentence if the record shall show him to have been guilty of no infraction of the rules of the prison. It is contended that this law should not be

construed as an engagement by the State to compensate a convict for obedience to rules which it is his duty to obey, but that it is rather a provision in the furtherance of prison discipline, which, while made by the Legislature because beyond the power of the board of inspectors to make, is still a rule of discipline analogous to those which the board may make and change from time to time, and, it is argued, may therefore be made to take effect upon past offenses. In our opinion, the language of the act clearly indicates that the intention of the Legislature was to assure to the convict a prescribed reduction upon compliance with the rules of the prison, which should be made known to him from time to time, and this right to earn a reduction of the term was one of which he could not be deprived. Such was the view taken by the Court in *Re Walsh*, 87 Mich 466; and the supreme court of Massachusetts reached a similar conclusion in relation to an act of that state upon which its opinion was asked by the governor (13 Gray, 618). This being the evident intention of the Legislature, we need not inquire whether or not a law which should constitute a reduction of time a privilege merely, and not a right, would be valid. The petitioner was convicted and sentenced under the earlier act, with this conditional right to a reduction of time. The effect of the act of 1893 is to deprive him, in part, of that right, by impliedly providing that, after the new law should take effect, his credits should be estimated upon a less favorable schedule than that in force when he was sentenced. To that extent we think the law is *ex post facto,* its effect being to increase, and not to mitigate, petitioner's punishment. It follows that he is entitled to credit upon the basis of the earlier statute. To his case the later act has no application.

It is also contended, upon behalf of the petitioner, that under the act of 1893 it is not within the power of the

prison authorities to determine whether he is serving a second or other term in the prison, and that, before he can be deprived of good time earned, that question must have been adjudicated upon a hearing, where he has had an opportunity to be heard, as upon the trial from which his conviction resulted. We think otherwise. This is not a case where the law has authorized the imposition of an increased penalty for a second offense, but one where a certain class of offenders are denied the benefits of a certain rule, made for the maintenance of good order in the prison. Whether it applies to a prisoner or not depends upon the fact of his being confined in that prison for the first time. This fact is one which the officers of the prison have ordinarily the means of determining, and the act evidently designs that it shall be determined by them. Such determination is not necessarily final, and a prisoner could doubtless attack the correctness of such determination upon *habeas corpus*.

The petitioner will be discharged.

The other Justices concurred.